**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ELVIN VICTORIAN JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>ASURION, LLC,<br><br>    Defendant. | Case No. 2:23-cv-01331-RFB-NJK<br><br>**ORDER** |

Before the Court is Defendant's motion for summary judgment (ECF No. 40). For the following reasons, the Court denies the motion.

**I.  PROCEDURAL HISTORY**

Plaintiff Elvin Victorian Johnson filed a Complaint against Defendant Asurion, LLC ("Asurion"), on August 28, 2023. ECF No. 1. Plaintiff brought three causes of action: (1) discrimination and retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (2) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and Nev. Rev. Stat. § 613.330 *et seq.*; (3) retaliation in violation of the ADA and the Nevada law. Id.

On September 21, 2023, Defendant filed a motion seeking dismissal of Plaintiff's first cause of action under the FMLA. ECF No. 8. On October 5, the parties stipulated to dismiss Plaintiff's first cause of action. ECF No. 9. The Court dismissed Plaintiff's first cause of action with prejudice on October 10. ECF No. 12.

On June 5, 2024, Defendant filed the instant Motion for Summary Judgment. ECF No. 40. The motion was fully briefed by August 7. ECF Nos. 43, 46.

## II. FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.

### A. Undisputed Facts

Plaintiff, Elvin Victorian Johnson was employed by Defendant, Asurion as a Premier Support Solutions Representative from October 12, 2017, to May 17, 2022. In 2020, Plaintiff began working from home due to the Covid-19 pandemic. Defendant provided Plaintiff with a Chromebox for the remote work. In December 2021, Defendant began offering incentives to employees to return to work. Plaintiff declined the offer and continued working from home due to his compromised immune system.

In February 2022, Defendant notified Plaintiff that he would be required to return to in-person work at Defendant's work site. A failure to do so would constitute Plaintiff's resignation unless an accommodation was submitted and approved. Plaintiff submitted an ADA accommodation request to continue working remotely based on his immunocompromised condition. On February 14, 2022, Plaintiff was informed that his remote work request was denied by Defendant's human resources department. On February 17, 2022, Plaintiff submitted a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding Defendant's failure to accommodate his ADA accommodation request. Plaintiff returned to the work site on February 18, 2022. On this day, he returned the company-provided Chromebox.

On March 21, 2022, Plaintiff emailed Defendant's Senior Vice President, reiterating his ADA accommodation request to continue working from home. This correspondence led to Plaintiff meeting with Ms. Barnett and Ms. Inglemon, Human Resources Business Partners employed by Defendant. During the meeting Plaintiff was granted an ADA accommodation to return to work-from-home.

Defendant issued new equipment for Johnson to use at home. Instead of a Chromebox, a portable PC running Google's operating system that Plaintiff plugged into his personal monitor – Defendant provided Plaintiff with a Chromebook laptop. Plaintiff requested permission from his supervisor to use his personal monitor instead of the Chromebook. The supervisor denied Plaintiff's request and informed him that he was prohibited from using his own equipment, and

that an accommodation would have to be approved for Plaintiff's use of personal equipment for work.

In March 2022, Johnson submitted an ADA accommodation request for a larger monitor. On April 11, 2022, AbsenceOne, Defendant's third-party administrator responsible for managing ADA accommodation requests communicated to Johnson that his request for accommodation was "closed" because it was a duplicative request. The letter stated that AbsenceOne "will handle this request for a new monitor under the case you already have opened. New medicals will be faxed over to your doctor under that open case." The accommodation was never approved or denied.

Plaintiff experienced technical difficulties with the Chromebook which prevented him from accessing the software needed to complete his work. Plaintiff alerted his supervisor to these challenges and notified his supervisor that the technical difficulties were preventing him from logging into work. From March 2022 – April 2022, Plaintiff made calls to the AbsenceOne hotline regularly, attempting to address the technical difficulties Plaintiff was encountering.

From April 5, 2022, to May 13, 2022, Defendant's employees, including Ms. Ingelmon, Ms. Barnett, and Mr. Potrzebowski, emailed Plaintiff explaining that he needed to submit documentation to Defendant so that his accommodation request for a larger monitor could be approved. On April 5, 2022, Mr. Potrzebowski emailed Johnson, explaining that he "advised [Plaintiff] of the requirements of the equipment that [Defendant] provide[s] as well as [Plaintiff's] options to seek necessary accommodations through [Defendant's] Absence One team." On April 8, 2022, Ms. Ingleman emailed Johnson, instructed him to "[p]lease call Absence One and state that you're asking for Workplace accommodation- requesting a larger screen." On April 12, 2022, Ms. Inglemon emailed Plaintiff referencing her April 8, 2022, email, asking Plaintiff: "Can you please confirm your understanding of the below email and the steps you need to take in the accommodation process to possibly be approved for a larger monitor?" On April 18, 2022, after Plaintiff did not respond, Ms. Inglemon followed up stating that she had "checked Absence One and [Plaintiff had] not filed a new accommodation for a monitor. As soon as [Plaintiff] file[s] the accommodation and submit[s] the required paperwork, [Defendant] would be happy to review [Plaintiff's] physician's accommodation recommendations for approval." On May 4, 2022, Mr.

Potrzebowski emailed Plaintiff, stating that Defendant's "records indicate you have not contacted AbsenceOne to open claim about equipment as discussed. Currently you have required equipment to perform job duties and any additional equipment needed must be approved through the ADA process." On May 5, 2022, after no response from Plaintiff, Ms. Inglemon resent the April 18, 2022, email. That same day, Ms. Barnett emailed Plaintiff the following: "Failing to report to work because you are waiting on a monitor is a concern since [Ms. Inglemon] has provided you step by step instructions in how to obtain the monitor through our accommodation process here at Asurion. Please let us know if you intend to go to your doctor to get the necessary paperwork to send to Absence One." On May 13, 2022, Ms. Inglemon sent Plaintiff an email stating that Plaintiff was recorded as a "No call No Show" on May 4 and May 10, 2022. In this correspondence, Ms. Inglemon said, "[t]o date, you have not submitted an accommodation request to AbsenceOne for an additional or larger monitor. If you do not open an accommodation claim by . . . May 16 . . ., we will make the determination that you have resigned from your position at Asurion." Plaintiff responded later that day, stating that he had made requests for the larger monitor and provided AbsenceOne with all the required medical documentation. On May 17, 2022, Plaintiff was terminated.

### B. Disputed Facts

The Court finds the following facts to be disputed: whether Plaintiff was unable to access the software Defendant requires its employees use due to technical difficulties; whether Plaintiff's lack of access to this software caused his absenteeism; whether Defendant deliberately refused to assist Plaintiff with his alleged lack of access to the software; whether Plaintiff submitted medical documentation stating that he could not work using the small monitor on the Chromebook Defendant provided; whether Defendant engaged in a good faith interactive process regarding Plaintiff's ADA accommodation request.

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). "[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party." Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### IV.   DISCUSSION

In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, Nevada courts have previously looked to the federal courts for guidance in discrimination cases. Pope v. Motel 6, 114 P.3d 277, 280 (Nev. 2005). Under NRS 613.330(1), it is an unlawful employment practice to discharge any individual because of his or her race, color, sex, religion, sexual orientation, age, disability, or national origin. Id.; see also Pope, 114 P.3d at 280.

Therefore, the Court analyzes Plaintiff's federal and state employment discrimination and retaliation claims together, relying on federal authority in the absence of contrary or differing Nevada state law.

### A. Discrimination in Violation of the Americans with Disabilities Act.

Defendant argues that Plaintiff failed to demonstrate that he is disabled within the meaning of the ADA, and asserts that Plaintiff was terminated for a legitimate, nondiscriminatory reason. Plaintiff contends that he has demonstrated his disability within the meaning of the ADA and argues that Defendant's Motion for Summary Judgment is precluded as a matter of law because

1    Defendant failed to engage in a good faith interactive process.

2    The Americans with Disabilities Act, 42 U.S.C. § 12101 prohibits employers from discriminating against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). A qualified individual with a disability is a person with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position. 42 U.S.C. § 12111(8). A person has a disability within the meaning of the ADA if he (A) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C); Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1223. A plaintiff does not need to present evidence that the defendant subjectively believes that the plaintiff is substantially limited in a major life activity. Rather, a Plaintiff meets the requirement of "being regarded as having such an impairment" merely by establishing that he or she has been subjected to an action prohibited under 42 U.S.C. §12102 because of an actual or perceived physical or mental impairment – whether or not the impairment actually limits or is perceived to limit a major life activity. Nunies v. HIE Holdings, Inc., 908 F.3d 428 (9th Cir. 2018).

In the employment context, covered employers generally must provide a reasonable accommodation for an otherwise qualified employee or applicant with a disability, if such an accommodation is requested. 29 C.F.R. § 1630.2. In order to identify an appropriate reasonable accommodation, the employer generally must "initiate an informal, interactive process with the individual with a disability in need of the accommodation." Id. at § 1630.2(o)(3). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." Humphrey v. Mem. Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001). Employers who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. An employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process. Liability does not arise in the absence of an available reasonable accommodation. Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1116.

In the instant matter, the Court finds that Plaintiff demonstrated that he has a qualified disability within the ADA's definition for two reasons. First, Plaintiff provided AbsenceOne, Defendant's third-party administrator responsible for managing ADA cases, with medical documentation sufficient to demonstrate that Plaintiff is disabled within the meaning of the ADA. Second, on two separate occasions Defendant approved Plaintiff's ADA accommodation requests. Defendant's review and approval of Plaintiff's ADA accommodation requests serve as an acknowledgement by Defendant that Plaintiff is disabled under the ADA.

The Court finds that on April 11, 2022, Defendant initiated the required interactive process for determining whether to grant or deny an ADA accommodation when AbsenceOne acknowledged receipt of Plaintiff's accommodation request, and informed Plaintiff that his request was being processed. Subsequently, Defendants failure to make a determination granting or denying Plaintiff's accommodation request constitutes a failure of the process. Defendant has not provided evidence to support a finding that there was no available reasonable accommodation. Thus, the Court finds that Defendant cannot prevail at the summary judgment stage because there is a genuine dispute as to whether Defendant engaged in good faith in the interactive process. Snapp v. United Transp. Union, 889 F.3d 1088, 1097 (9th Cir. 2018).

Under the ADA, a plaintiff must first establish a *prima facie* case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The ADA recognizes the failure to provide reasonable accommodation as a form of discrimination. See 42 U.S.C. § 12112(b)(5)(A). To make out a prima facie case for the failure to provide a reasonable accommodation, a plaintiff must show (1) the employee is a qualified individual, (2) the employer receives adequate notice, and (3) a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. Snapp, 889 F.3d at 1096, cert. denied sub nom. Snapp v. Burlington N. Santa Fe Ry. Co., 586 U.S. 1073 (2019). First, the employee must make a *prima facie* showing of discrimination. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). "The burden of production – but not persuasion – then shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action." Id. If the employer can establish as much, the burden returns to the employee who must then show that the proffered reason is

pretextual. Id.

In this instance, while Defendant argues broadly that Plaintiff is not disabled as defined by the ADA, The Court finds that Plaintiff's disability is within the ADA's definition of being disabled as evidenced by Defendants grant of Plaintiff's initial ADA accommodation request. Furthermore, the Court finds that Defendants received adequate notice of Plaintiff's ADA disability accommodation request as evidenced by Defendant's third-party administrator's acknowledgement that they received Plaintiff's request on April 11, 2022. Defendant does not argue that accommodating Plaintiff's request for a larger screen or the ability to use a remote desktop monitor placed an undue hardship on operation of their business. The Court finds that there is no undisputed evidence that granting Plaintiff's request would have placed an undue hardship on the operation of Defendant's business. Thus, Plaintiff has successfully established a *prima facie* case for the failure to provide a reasonable accommodation.

Having found that Plaintiff has made a *prima facie* showing of discrimination, next, the Court determines if there was a legitimate or pretextual reason for Defendant's failure to accommodate. Defendants assert that the adverse employment action taken when they terminated Plaintiff's employment was supported by a legitimate, nondiscriminatory reason. Defendants contend that they informed Plaintiff on several occasions that there were outstanding documents needed for Plaintiff's ADA accommodation request to be considered. When Plaintiff failed to submit the requested documentation, or attend work, Defendant terminated his employment due to excessive absence from the job. Plaintiff argues that Defendant became resentful of Plaintiff's remote work accommodation status, as well as the fact that Plaintiff had pursued an EEOC complaint and retaliated against Plaintiff by deliberately refusing to assist him with technical issues preventing Plaintiff from logging into work. Defendant asserts that they repeatedly emailed Plaintiff regarding the unexcused absences and received no response. Plaintiff argues that he was unable to receive the emails Defendant sent because he was unable to log in due to technical difficulties. Plaintiff's exhibits show that he repeatedly contacted his supervisor via text and over the phone requesting assistance regarding the technical difficulties Plaintiff was experiencing.

The Ninth Circuit has held that a plaintiff may prove pretext in two ways: (1) indirectly,

by showing that the employer's proffered explanation is "unworthy of credence" because it is inconsistent or not believable; or (2) directly, by showing that unlawful discrimination likely motivated the employer. Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000). These methods of establishing a pretext are not exclusive and a combination of the two kinds of evidence may serve to establish pretext making summary judgement improper. Id.

Here, the Court finds that the facts underpinning Defendant's legitimate nondiscriminatory justification for terminating Plaintiff are in material dispute.

### B. Retaliation in Violation of the Americans with Disabilities Act

Plaintiff argues that Defendant retaliated against him for requesting an ADA accommodation by refusing to assist Plaintiff with technical difficulties and subsequently terminating his employment due to his disability. Defendant contends that Plaintiff's retaliation claims cannot prevail because Plaintiff was provided with the same technology Defendant provides to all employees who work remotely, and there was a legitimate nondiscriminatory reason Plaintiff was terminated.

The ADA anti-retaliation provision states that, "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Alvarado v. Cajun Operating Co., 558 F.3d 1261, 1264 (9th Cir. 2009). To establish a *prima facie* case of retaliation under the ADA, an employee must show that: (1) they engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two. If the employee established a prima facie case, they avoid summary judgement unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual. Pardi v. Kaiser Fond. Hosps., 389 F.3d 840, 849 (9th Cir. 2004).

Here, Plaintiff engaged in a protected activity when he requested an ADA accommodation. As a result of this request not being properly resolved, Plaintiff was allegedly unable to log into

work and was subsequently terminated. Plaintiff contends that the casual link represents Defendants intentional failure to address the technical difficulties he was experiencing or resolve his ADA claim which caused him to be absent. Defendants assert that Plaintiff was terminated for a legitimate nondiscriminatory reason: excessive absences. Additionally, Defendants challenge Plaintiff's alleged technical difficulties asserting that Plaintiff was provided with the technology all Defendant employees use when working remotely.

The Court finds that Plaintiff has established a prima facie case of retaliation under the ADA. Furthermore, the Court finds that the aforementioned facts constitute triable issues of fact as to whether Defendant's reason for terminating Plaintiff's employment was pretextual.

## V.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** Defendants Motion for Summary Judgement is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Pretrial Order by **May 9, 2025**.

**DATED:** March 30, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**